UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RON KIRK THOMPSON (#111262)                               CIVIL ACTION

VERSUS

RICHARD STALDER, SECRETARY, ET AL.                        NO. 06-0659-D-M2

NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, March 4, 2008.

                                        _____
                                        MAGISTRATE JUDGE CHRISTINE NOLAND

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**RON KIRK THOMPSON (#111262)**                **CIVIL ACTION**

**VERSUS**

**RICHARD STALDER, SECRETARY, ET AL.**         **NO. 06-0659-D-M2**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motions to Dismiss and Motions for Partial Summary Judgment, rec.doc.nos. 38, 41, 94 and 97. These motions are opposed.

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Secretary Richard Stalder, Warden Burl Cain, Ass't. Warden Shirley Coody, Ass't. Warden David Bonnette, Ass't. Warden Leslie Dupont, Ass't. Warden Kevin Benjamin, Col. Tim Delany, Col. Charles Honeycutt, Capt. Steve Brengettsy, Lt. Cleveland Mills, Lt. Charles Westbrook, Lt. Chad Butler, Classification Officer Johnny J. Joseph, Major Reginald Ladmirault, Capt. Chad Oubre, Lt. Clint Bond, Legal Programs Director Trish Foster, and legal programs Administrative Manager Twilla James, alleging that the defendants have violated his constitutional rights in numerous respects, commencing in November, 2005, notably through, inter alia, double-celling of inmates at Camp J of LSP, exposure to unconstitutional conditions of confinement, the use of inmate orderlies on the cell tiers, overcrowding and under-staffing of the prison, inadequate procedures

provided for the assertion of legal claims and grievances, and the denial of religious accommodation, including a proper religious diet.[1]

Addressing first the defendants' motion for summary judgment, the defendants assert, relying upon certified copies of the plaintiff's administrative remedy proceedings, that the plaintiff has failed to exhaust administrative remedies relative to certain of his claims.  Pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him prior to the institution of suit in federal court relative to prison conditions.  This provision is mandatory and allows for no exceptions.  Further, summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  Supporting affidavits must set forth facts which would be admissible in evidence.  Opposing responses must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Federal Rules of Civil Procedure.

In his Complaint, as amended, the plaintiff alleges that on or about November 9, 2005, while he was housed in Camp J at

---

[1] Attempts by the United States Marshal's Office to serve defendant Twilla James have proven unsuccessful because the Louisiana Department of Public Safety and Corrections has refused to accept service on behalf of this individual.  Accordingly, defendant James has not appeared in this proceeding and has not participated in the instant motions.  Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceedings.  It is appropriate, therefore, that the plaintiff's claims against defendant Twilla James be dismissed, without prejudice.

LSP, he and other inmates were approached by security officers and informed that they were going to be "double-celled". He asserts that this was in violation of both federal law and prison regulations, particularly in light of the fact that Camp J is designed to house "various kids of violent inmates" and that fights are common among inmates assigned to this housing classification. Notwithstanding, he was placed in a small and crowded cell with a co-inmate, and for the months of November and December, 2005, he was required to eat, sit and sleep on a "floor mattress". The plaintiff also complains that his co-inmate at that time was both unhygienic and suffering with psychological illness. The plaintiff complains that other inmates housed on the tier, although not housed in his cell, have included mental health patients, known enemies, and inmates with communicable diseases. He asserts that, in this situation, he faced the possibility of coming in contact with these inmates during medical call-outs, during yard time, or through error, and that "anything is bound to happen". As examples, he cited several occasions when security officers allegedly mistakenly left doors open or allowed inmates out of their cells without restraints, and he asserts that incidents of violence have increased since double-celling was commenced. He also complains that cells to which he has been assigned have been unhygienic, being poorly cleaned, poorly ventilated, infested with insects, and equipped with poorly working toilets.

In addition to the foregoing, the plaintiff complains that he was involved in a fight with his co-inmate cell-mate in December, 2005.  Not wanting to be labeled as a rat, however, the plaintiff reported to security officers that he had merely injured himself by falling down in his cell.  In an attempt to thereafter obtain a change in housing, he took action to earn himself a disciplinary violation and, at a subsequent disciplinary board hearing, reported the fight and requested to be assigned to new housing.  In response, security officers placed him in a separate cell for "protection", but several days later, defendant Mills escorted him back to his original location, and the plaintiff apparently had to declare a mental health emergency in order to avoid being placed back with the offending co-inmate.  At a second disciplinary board hearing, chaired by defendant Warden Coody, the plaintiff again explained about the fight, and as a result of this hearing, the plaintiff was apparently allowed to be placed in separate housing.  He complains, however, that this was accomplished by assigning him to a more punitive classification level at Camp J.  Although defendant Ladmirault thereafter offered the plaintiff an opportunity to return to the less onerous higher classification level, the plaintiff refused because this would have meant returning to a double-bunk cell.

The plaintiff also complains that he was sometimes denied his assigned one hour of out-of-cell exercise because unnamed

security officers were lazy or because there were insufficient jump-suits available.

The plaintiff also complains of the practice of allowing co-inmate "tier walkers" to monitor inmates on the cell tiers. He complains that this creates a dangerous situation because these tier walkers have been known to introduce weapons and contraband on the tiers. In addition, the plaintiff complains of two occasions when he had a conflict with one of the tier walkers, resulting in a liquid substance being thrown at him in his cell.

The plaintiff next complains that the prison is overcrowded and understaffed. He asserts that some guard towers are allowed to remain empty and that security officers earn extra money by working overtime, money which could be utilized to hire extra guards. He complains of budget cuts by the State of Louisiana, of an influx of new inmates at LSP after Hurricane Katrina, of the closing of several housing locations for repair or for safety reasons, of inflated salaries earned by supervisory officials, and of Warden Cain taking an unauthorized "cut" of money coming into the prison. The plaintiff asserts that this is all part of a conspiracy by prison officials to enrich themselves.

The plaintiff next complains that his First Amendment right to seek redress of grievances has been obstructed by the manner in which legal mail and administrative grievances are handled at LSP. Specifically, he asserts that he is not

allowed to have hard-cover lawbooks or sufficient paper, pencils or envelopes in administrative segregation at Camp J. He also complains that his administrative grievances have been improperly handled. Notably, he asserts that these grievances are being distributed by security officers instead of by legal programs personnel, sometimes by security officers against whom the grievances are directed. This results in mail being mis-delivered on occasion or delivered late, and it has also resulted in verbal threats and harassment from security officers. In addition, the plaintiff complains that responses to his grievances are often delayed and that he has had to wait months to receive such responses.

The plaintiff next complains of one occasion, on an unspecified date, when he requested access to his legal materials. In response, he was subjected to verbal threats and harassment by defendants Chad and Bond. When the plaintiff thereafter requested access to a social worker, defendants Chad and Bond placed him in restraints and made him stand outside in the cold and rain for several hours and never retrieved his legal work.

Finally, the plaintiff complains that his First Amendment right to practice his religion has been violated. Specifically, he asserts that he became a Rastafarian in 2004 and that, as a result, he no longer eats meat. Notwithstanding, he complains that "security does not honor" his dietary restrictions. In addition, he asserts that

Rastafarian services are not made available to inmates and that his hard-cover Rastafarian book has been taken from him. When he complained to defendant Warden Coody about these deficiencies, she merely responded that she would look into it.

Upon a review of the foregoing allegations, juxtaposed against a review of the plaintiff's administrative remedy proceedings filed into the record of this proceeding, it appears that the defendants' motion for partial summary judgment, addressed to the issue of exhaustion of administrative remedies, is in large part well-taken. In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), the Court recognized that the primary purpose of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'". Id. In other words, "the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." Id. Accordingly, to be deemed adequate, an inmate's administrative grievance ("ARP") must be sufficiently specific, both in specifying a complaint and, where appropriate, in identifying the person or persons responsible for events complained of. In the plaintiff's grievance in the instant case, however, most of the claims asserted in this lawsuit have been omitted. Specifically, there are no claims

whatever that the plaintiff was subjected to a fight, or even harm, danger or threats, at the hands of any co-inmate, that he was placed in proximity to known enemies or contagious inmates, that he was subjected to unhygienic, insect-infested, poorly ventilated or toilet-deficient living units, that state or federal laws have been violated through the use of co-inmate tier orderlies, that the prison is overcrowded and/or understaffed, that his legal mail or administrative grievances have been obstructed or interfered with, that he has been denied access to legal supplies or hard-cover books, that he was ever forced to stand in the rain and cold upon requesting access to his legal materials, that he has been threatened or verbally abused, or that he has been denied a Rastafarian religious diet, Rastafarian services or his "Rastafarian Book".  The only claims which may liberally be seen to have been asserted in the plaintiff's ARP - and also arguably to have been asserted in the instant Complaint - are (1) that he was improperly subjected to double-celling and denied access to both a proper bed and sleeping accommodations when he was housed with an overweight co-inmate commencing on November 9, 2005, (2) that he was denied access to exercise because of a lack of available jump-suits on his tier, and (3) that he was denied, in unspecified ways, an opportunity to practice his religious beliefs.  Accordingly, it is clear that, other than these specific enumerated claims, the claims asserted in the plaintiff's Complaint have not been administratively asserted

or exhausted and must be dismissed pursuant to 42 U.S.C. § 1997e.[2]

In addition, the Court finds that even with regard to the plaintiff's asserted claim in his administrative grievance relative to a denial of an opportunity to practice his religious beliefs, he has likewise not sufficiently presented this claim so as to be seen to have administratively exhausted same within the meaning of 42 U.S.C. § 1997e.  Specifically, whereas he asserted in his Complaint the explicit claims of (1) a denial of his Rastafarian meat-free diet, (2) a failure to provide an opportunity for Rastafarian services, and (3) the confiscation of his hard-cover Rastafarian book, there is nothing in the plaintiff's ARP which would have placed any prison official on notice of these specific claims.  All that is included in the referenced ARP is the briefest of conclusory statements to the effect that he is "unable to practice [his] religious beliefs."  He does not state what his beliefs are, what his religion requires, or in what manner his beliefs or practices have been obstructed.  In short, the Court finds that, absent more specific factual detail or allegations of actual misconduct in the ARP, the plaintiff

---

[2] There are several claims asserted in the referenced ARP which have not be explicitly raised in the plaintiff's Complaint and so will not be addressed or treated as included in this lawsuit, including, <u>inter alia</u>, that inmate counsel assistants at LSP are unhelpful and poorly trained, that he has been denied equal protection because he has been maintained in extended lockdown notwithstanding that other inmates have been allowed to leave and notwithstanding that he has been cleared for release, and that the failure to release him from extended lockdown is based on retaliation for his administrative grievances.

failed to place prison officials on notice of this claim or "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." Accordingly, this claim - of a denial of religious accommodation - has not been administratively exhausted and must be dismissed pursuant to 42 U.S.C. § 1997e.

Finally, and in the alternative, the Court concludes that many of the plaintiff's claims asserted in his Complaint are unexhausted because they occurred after the date that he submitted his ARP and so, <u>a fortiori</u>, were not included in the referenced ARP. Specifically, the Court finds that all claims involving events occurring after the filing of the ARP are subject to dismissal for failure to exhaust administrative remedies for this reason.[3] Notably in this regard, inasmuch as the plaintiff's administrative grievance is dated November 21, 2005, less than two weeks after commencement of double-celling at Camp J at LSP, and inasmuch as his Complaint and other pleadings reflect that he was not involved in an alleged physical altercation with his cell-mate until December, 2005, over a month after commencement of the ARP, it is clear that

---

[3] The plaintiff asserts that he filed a second administrative grievance which addressed his claims asserted in this lawsuit in greater detail, but he complains that prison officials never responded thereto. Notwithstanding, he has not provided this Court with a copy of the referenced grievance, and prison officials have advised the Court that they have no record of ever having received such a grievance. In the Court's view, it was incumbent upon the plaintiff to retain a copy of this grievance for his records, and it was incumbent upon the plaintiff, upon receiving no timely response to the grievance, to either re-file it or to proceed unilaterally to the second step of the administrative process.

the plaintiff's claims regarding his request for protection and subsequent disciplinary proceedings have neither been asserted nor exhausted through the administrative process and are subject to dismissal for this reason.

Turning to the two remaining claims which the Court has found were raised in the plaintiff's administrative grievance and exhausted through the administrative process, i.e., (1) that he was improperly subjected to double-celling and denied a proper bed and sleeping accommodations commencing on November 9, 2005, and (2) that he was denied an opportunity for exercise because there were insufficient jump-suits available, the Court will address the defendants' motions to dismiss for failure to state a claim upon which relief may be granted.  In this regard, a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure may not be granted unless it appears certain that the plaintiff will be unable to prove any set of facts in support of his claim that would entitle him to relief.  Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994), citing Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994).  See also Green v. State Bar of Texas, 27 F.3d 1083, 1086 (5th Cir. 1994) ("A dismissal will not be affirmed if the allegations support relief on any possible theory").  In reviewing a motion to dismiss under this Rule, this Court must accept all well-pleaded facts as true and must review them in the light most favorable to the plaintiff.  Green, supra, at 1086.

In response to the plaintiff's allegations, the defendants assert that they are entitled to qualified immunity. Specifically, they contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's constitutional rights. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Hale v. Thinly, 45 F.3d 914 (5th Cir. 1995). As recently enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. Second, the district court must determine whether the rights allegedly violated were clearly established. This inquiry, the Court stated, must be undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. Id. In the instant case, the defendants assert that the plaintiff's claim fails in the first instance because he has failed to allege facts in the Complaint which would support a finding that they participated in any violation of his

constitutional rights.

Undertaking the Saucier analysis, the Court concludes that the defendants' motions are well-taken and that the plaintiff's allegations fail to overcome the assertion of qualified immunity. Specifically, the Court finds that the plaintiff has not alleged the violation of his constitutional rights by any defendant.

In essence, the plaintiff's remaining claims, (1) that he was forced to share a small cell with an overweight and annoying cell-mate and was required to sleep on a mattress on the floor for some period of time, and (2) that he was deprived of an opportunity for exercise because of a lack of jump-suits and because of the laziness of prison guards, implicate the plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. In this regard, however, it is well-settled that the United States Constitution imposes upon prison officials only minimal requirements in the treatment and facilities which they provide to prisoners. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." Harris v. Angelina County, Texas, 31 F.3d 331 (5th Cir. 1994), citing

Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Second, under a subjective standard, the Court must determine whether the prison official responsible for the deprivation was "'deliberately indifferent' to inmate health or safety". Farmer v. Brennan, supra. Mere negligence is not a basis for liability under § 1983. Oliver v. Collins, 904 F.2d 278, 281 (5th Cir. 1990); Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987). Rather, prison officials must both be personally aware of facts from which an inference may be drawn that a substantial risk of serious harm exists, and they must also have drawn the inference. Farmer v. Brennan, supra. The deliberate indifference standard is appropriately applied to the plaintiff's allegations regarding the conditions of his confinement. Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995); Wilson v. Seiter, supra.

Initially, with regard to the plaintiff's claim that he was denied an opportunity for exercise because there were allegedly insufficient jump-suits available and because security officers preferred not to be troubled with escorting inmates to their daily one-hour yard-time, the Court concludes that the plaintiff has failed to state a cause of action against any defendant because he has failed to provide sufficient factual allegations of causal connexity between the conduct of any defendant and the violation alleged. In this regard, pursuant to well-established legal principles, the law is clear that, in order for a prison official to be held liable under § 1983, the

official must have been either personally involved in actions causing the alleged deprivation of an inmate's constitutional rights, or there must have been a causal connection between the actions of the official and the constitutional violation sought to be redressed. Lozano v. Smith, 718 F.2d 756 (5th Cir. 1983). Any allegation that the defendants are responsible for the conduct of their subordinates or co-employees is alone insufficient to state a claim against them under § 1983. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In the instant case, the plaintiff fails to identify any defendant in his Complaint who was personally involved in denying him an opportunity for exercise. Accordingly, in the absence of any suggestion in the record that any specific defendant was responsible for denying the plaintiff exercise, there is no basis for the imposition of liability against the defendants, and they are entitled to dismissal in connection with this claim.

Turning to the plaintiff's claim relative to the double-celling of inmates at Camp J, the Court finds, as well, that the plaintiff has failed to allege a constitutional violation against any defendant. In the first place, the law is clear that the mere fact that an inmate may be double-celled for a period of time does not, as a matter of law, state a claim of constitutional dimension. It has been held that such a claim, without more, does not violate an inmate's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). See also Duncan v. Puckett, 91 F.3d 137 (5th Cir. 1996) (claim of being placed "in a single cell with another inmate" dismissed as frivolous); Higgins v. Jefferson Parish Prison, 1998 WL 24137 (E.D. La. March 7, 1988)(claim of

"being housed in a cell with another inmate which was originally designed for single occupancy" dismissed as frivolous). Further, the record reflects that the decision to double-cell inmates at LSP was made in the aftermath of Hurricane Katrina and was prompted by an influx of a large number of inmates into LSP from around the state. The Court will not second-guess the decision of prison officials to accommodate these inmates in the manner deemed best appropriate.[4] Prison administrators are afforded broad administrative and discretionary authority over the institutions they manage, and lawfully incarcerated persons retain only a narrow range of protected liberty interests. Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). So long as the conditions and degree of confinement are within the sentence imposed on an inmate and do not otherwise violate the Constitution, the Due Process Clause does not in itself subject a prison official's treatment of an inmate to judicial oversight. Hewitt, supra, 459 U.S. 468, 103 S.Ct. at 869. Where the decision to keep an inmate is reasonably related to legitimate security objectives and is not an exaggerated response to security considerations, there is no denial of due process. McCord v. Maggio, 910 F.2d 1248

---

[4] To the extent that the plaintiff complains that he was double-celled on November 9, 2005, whereas the written directive authorizing such double-celling was not formally implemented until the next day, the Court finds this to be a mere violation of state law, which is not actionable under § 1983. See Jackson v. Cain, 864 F.2d 1235 (5th Cir. 1989).

(5th Cir. 1990). Accordingly, on the record before the Court, there is no apparent violation of the plaintiff's constitutional rights in the decision to double-cell inmates at LSP.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that the plaintiff's claims against defendant Twilla James be dismissed for failure of the plaintiff to serve this defendant within 120 days as mandated by Rule 4(m) of the Federal Rules of Civil Procedure. It is further recommended that the defendants' motions for partial summary judgment and to dismiss, rec.doc.nos. 38, 41, 94 and 97, be granted, dismissing the plaintiff's claims against all defendants, and that this action be dismissed.

Signed in chambers in Baton Rouge, Louisiana, March 4, 2008.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**